Carol SCHULTZ, Appellant–Plaintiff,

v.

**ERIE INSURANCE GROUP,**
Appellee–Defendant.

No. 49A02–0006–CV–386.

Court of Appeals of Indiana.

Aug. 27, 2001.

Brian E. Weiss, Indianapolis, IN, Attorney for Appellant.

Richard K. Shoultz, Sonia Das, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Carol Schultz appeals the grant of summary judgment in favor of appellee-defendant Erie Insurance Group ("Erie").[1] She contends that the term "faulty workmanship" in her insurance policy is ambiguous and, therefore, her claims should go before a jury. Schultz also maintains that, even if the term is unambiguous, some of her damages resulted from sources other than "faulty workmanship" and are covered by her insurance policy. Finally, Schultz argues that Erie failed to show that "another excluded peril" contributed to her loss.

### FACTS

The facts most favorable to Schultz indicate that she hired Ricky Pierce d/b/a Pierce Construction ("Pierce") and his brother, Mike Pierce, to renovate her home for $25,000. Renovations were to have included modifications to the kitchen, bathroom, and living room, and an addition of a new room to Schultz's home. She did not reside in the home while the renovations were taking place but relied on periodic check-ups to inform herself of Pierce's progress.

Pierce began work on August 25, 1997, by removing personal property from Schultz's home and leaving the items outside. He refused Schultz's repeated requests to shelter the items in her garage. Pierce received his first draw of $8333 on September 11, 1997. The next week he rented a backhoe and began digging in her yard. Pierce explained that he was trying to find the septic or finger system by digging with the backhoe. During the dig, Pierce broke Schultz's septic pipe and tore

---

1. Though the caption at summary judgment and on appeal identifies the insurance company as "Erie Insurance Group," the appellee-defendant's proper identification is "Erie Insurance Exchange." Record at 319; Appellee's brief at 1.

siding off of her home—damage that Pierce never repaired.

Sometime in early October 1997, Schultz arrived at her home to discover that stop-work orders had been posted because Pierce was an unlicensed contractor and had never obtained construction permits to renovate her home. In correcting the problem, Schultz learned that Pierce had forged her name to a permit application. She ultimately fired Pierce in early November 1997.

At the time she fired Pierce, the items of Schultz's personal property, which Pierce left outside, were already ruined. These items included: a toilet, water softener, pressure tank, screen door, carpet, wood stove, mirror, bathroom vanity, and windows. And, according to building inspectors, Pierce's renovations were substandard and in some cases dangerous. The most egregious examples follow. First, because of illegal and improper installation, Schultz would have been scalded had she turned on the shower. Second, Pierce's installation of plumbing in the ceiling instead of under the floor would cause lines to freeze. Finally, Pierce improperly installed electrical wiring that would have caused a fire. In sum, most, if not all, of the work Pierce performed would have to be redone.

Erie insured her home during the entire course of Pierce's work. Schultz, therefore, submitted a claim to Erie for the damages arising out of Pierce's work. Schultz's policy included a ten-item list of losses excluded from coverage. According to one exclusion, Erie would not pay for a loss if it was "caused by . . . mechanical breakdown, *deterioration, wear and tear,* marring, inherent vice, latent defect, rust, smog, wet or dry rot, mold, fungus or spores." R. at 39 (emphases supplied). In addition, the policy excluded coverage for a loss "[c]aused by, resulting from, contributed to or aggravated by *faulty or inadequate* . . . design, development of specifications, *workmanship, construction* . . . of property whether on or off the residence premises by any person, group, organization, or governmental body *if any peril excluded by this policy contributes to the loss in any way.*" R. at 39 (emphases supplied). After reviewing the policy to determine if it covered Schultz's losses, Erie concluded it owed her no coverage.

Erie then sought a declaratory judgment determining that it owed Schultz no coverage. Schultz counterclaimed against Erie, asserting a claim under the insurance policy, and brought a third-party claim against Ricky and Mike Pierce. Thereupon, Erie filed a motion for summary judgment, requesting judgment in its favor. In its brief in support of summary judgment, Erie relied on Schultz's deposition wherein she testified that all of her damages arose out of Pierce's construction work. R. at 228. The trial court awarded summary judgment in favor of Erie pursuant to Ind.Trial Rule 54(B).[2] Schultz now appeals.

## DISCUSSION AND DECISION
### I. Standard of Review

A grant of summary judgment requires that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ind.Trial

---

2. T.R. 54(B) provides:

**Judgment upon multiple claims or involving multiple parties.** When more than one [1] claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Rule 56(C). On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them in the same way. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). We view the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the nonmoving party. *Id.* Where the case turns on a written document, the court must find that the document's provisions are unambiguous. *B & R Farm Servs., Inc. v. Farm Bureau Mut. Ins. Co.*, 483 N.E.2d 1076, 1077 (Ind.1985). Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his day in court. *Id.*

## II. Erie's Policy

■ Erie provided Schultz with what amounts to an all-risk policy, though that nomenclature appears nowhere in the policy itself. Typically, all-risk policies allow recovery "for fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." 13A George J. Couch, *Couch: Cyclopedia of Insurance Law* § 48:141, at 139 (2d ed.1982). A fortuitous event is one that is "unexpected and not probable, and caused by an external force, that is, not resulting from an internal characteristic of the property." Jane Massey Draper, Annotation, *Coverage Under All-Risk Insurance*, 30 A.L.R. 5th 170, 205 (1995). Under Schultz's policy, Erie pays "for risks of direct physical loss to property . . . except as excluded or limited" by the policy. R. at 39.

### A. Meaning of "Faulty Workmanship"

■ For the trial court to have rendered summary judgment, it must have found that the term "faulty workmanship"

in Erie's policy was unambiguous. *See B & R Farm*, 483 N.E.2d at 1077. Schultz argues that the term "faulty workmanship" in Erie's insurance policy is ambiguous, and, therefore, the trial court erred in granting Erie summary judgment. For reasons set forth below, we conclude that the term in Erie's policy is unambiguous.

But we believe that the trial court erred in granting summary judgment. There is a genuine issue of material fact regarding whether two excluded perils contributed to Schultz's losses. *See infra* Part II.B. Therefore, to aid the parties' and the trial court's disposition of this action, we include on remand our ruling on the ambiguity of "faulty workmanship." While we decline to decide which losses are attributable to faulty workmanship, we discuss the reach of "faulty workmanship."

■ Courts construe ambiguous terms in an insurance policy in favor of the insured, especially where those terms limit or exclude coverage. *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind.1998). Construing ambiguous terms in favor of the insured promotes the policy's basic purpose of indemnity. *Id.* "Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). Reasonable persons might differ if the term is susceptible to more than one interpretation. *Meridian Mut.*, 698 N.E.2d at 773. Where terms are unambiguous, however, they should be given their plain and ordinary meaning. *Id.* Failure to define a term in an insurance policy does not necessarily make it ambiguous. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997).

The parties have not offered, nor has our research revealed, any Indiana case law specifically defining the term "faulty

workmanship" in an insurance policy. Erie, in part, relies on *Hostetler v. State Farm Fire & Cas. Co.*, which involved an insurance company's exclusion of coverage for "faulty design or construction." 521 N.E.2d 1357, 1360 (Ind.Ct.App.1988). The Hostetlers claimed that snow and ice damaged their roof, while a State Farm engineer determined that the damage was due to "faulty design or construction." *Id.* We affirmed the trial court's entry of summary judgment for the insurance company because the Hostetlers failed to rebut State Farm's designated evidence with anything other than reassertions of their original complaint. *Id.* Therefore, they failed to demonstrate a genuine issue of material fact for trial. Because *Hostetler* involves no examination of the specific policy language, it is inapposite and unhelpful here.

More generally, Indiana courts have reviewed standard commercial general liability (CGL) policies, which insure contractors and builders for property damage caused by their own "faulty workmanship." *See Ind. Ins. Co. v. DeZutti*, 408 N.E.2d 1275 (Ind.1980); *R.N. Thompson & Assocs., Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160 (Ind.Ct.App.1997), *trans. denied.* These cases, however, focus on which property damage—resulting from faulty workmanship—is covered, not what constitutes "faulty workmanship." Our supreme court settled the issue with a chiasmus: " '[T]he policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.' " *See DeZutti*, 408 N.E.2d at 1279 (alteration in original) (quoting *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 796 (1979)). In other words, CGL coverage does not include expenditures required "to correct, repair or replace" a builder's own work. *Id.* Rather, CGL policies cover damages to persons or other property caused by the builder's faulty workmanship.[3]

Because no Indiana court has defined "faulty workmanship" in the context of any insurance policy, we find the determinations of other jurisdictions helpful in our analysis. At least four other courts have found the term "faulty workmanship" in all-risk policies to be unambiguous. *See L.F. Driscoll Co. v. Am. Protection Ins. Co.*, 930 F.Supp. 184, 187 (E.D.Pa.1996) ("This Court finds the phrase 'faulty workmanship' to be unambiguous and will rely on its plain, ordinary meaning rather than straining to justify a liberal interpretation of the phrase."), *aff'd*, 114 F.3d 1172 (3d Cir.1997); *Kroll Constr. Co. v. Great Amer. Ins. Co.*, 594 F.Supp. 304, 307 (N.D.Ga.1984) ("The term 'workmanship' is not ambiguous; it simply means 'the execution or manner of making or doing something.' ") (quoting *Webster's Third New International Dictionary* 2635 (4th ed.1976)); *Brodkin v. State Farm Fire &*

---

3. The following illustration draws a helpful distinction:

> "When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. The happenstance and extent of the latter liability is entirely unpredictable[;] the neighbor could suffer a scratched arm or a fatal blow to the skull from the peeling stonework. Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon tort concepts, injury to persons and damage to other property constitute the risks intended to be covered under the CGL."

*R.N. Thompson*, 686 N.E.2d 160, 162–63 (alteration in original) (quoting *Weedo*, 405 A.2d at 791).

*Cas. Co.,* 217 Cal.App.3d 210, 265 Cal.Rptr. 710, 714 (1989) ("Again, the exclusion is clear and unambiguous and expressly covers the damage claimed here."); *McDonald v. State Farm Fire & Cas. Co.,* 119 Wash.2d 724, 837 P.2d 1000, 1005 (1992) ("[I]t is difficult to reasonably interpret the policy exclusion for faulty construction and defective materials ... as ambiguous."). But at least one court has found that "faulty workmanship" is ambiguous. *See Allstate Ins. Co. v. Smith,* 929 F.2d 447, 450 (9th Cir.1991) ("[W]e find the term 'faulty workmanship' ambiguous, and consequently apply the construction most favorable to the insured."). In our review of these cases, we were mindful that, to a great extent, the context of the policy gives meaning to the individual terms. *See id.* ("[I]t is important to remember that the policy's meaning 'is to be derived from the circumstances of the particular case and not in the abstract.'") (quoting *Tzung v. State Farm Fire & Cas.,* 873 F.2d 1338, 1340 (9th Cir.1989)).

Schultz urges us to adopt the Ninth Circuit's analysis and ultimate finding of ambiguity in the term "faulty workmanship." The property damage in *Allstate* resulted when a roofer removed most of the roof of an office building but failed to place a temporary cover over the area. It rained during the night while the building was exposed, ruining office equipment and improvements that had been made. The Ninth Circuit relied in part on a distinction between a "flawed product" and a "flawed process" in concluding that "faulty workmanship" was ambiguous. *Id.* at 450. The court stated that "faulty workmanship" denoted *either* a flawed finished product *or* a flawed construction process. *Id.* "Faulty workmanship" was ambiguous, the court reasoned, since the word "workmanship" allows two definitions. "Workmanship" can mean:

"1. something effected, made, or produced: WORK

2. the art or skill of a workman: CRAFTMANSHIP"

*Id.* (quoting Webster's Ninth New Collegiate Dictionary 1359 (1984)). Then, applying the construction most favorable to the insured, the court construed the term "faulty workmanship" to mean a flawed finished product. Because the roofer's act of leaving the premises unprotected was not a finished product, coverage could not be excluded on the basis of faulty workmanship.

We find this analysis unpersuasive for three reasons. First, while the term "faulty workmanship" allows at least two definitions, we see no reason why it must mean *either* a "flawed product" *or* a "flawed process." Since "workmanship" denotes both "process" and "product," an insurer could just as likely have both perils in mind when it drafts a policy's list of exclusions. Second, the "either/or" approach creates a false distinction, failing to take into account that a flawed process will often lead to a flawed product. This is especially true where, as here, the policy excludes losses caused by faulty materials used in construction. R. at 39. If the materials used are adequate and a flawed product still results, it is likely that a flawed process led to the flawed product. Third, the immediate context of Erie's policy indicates that "faulty workmanship" means more than just the finished product. The policy reads:

8. Caused by, resulting from, contributed to or aggravated by faulty or inadequate:

a. planning, zoning, development;

b. design, development of specifications, workmanship, construction;

c. materials used in construction; or

d. maintenance; of property....

R. at 39. Read in context, "workmanship," falling between planning and maintenance, at the very least signifies a component of

the building process leading up to a finished product. Therefore, we find that "faulty workmanship" is unambiguous and should not be construed, in the context of this policy, to mean only a flawed finished product. Moreover, we leave for the factfinder the issue of whether some of Schultz's damages resulted from causes other than faulty workmanship and are thus covered by the policy.

### B. Other Excluded Peril Contributing to the Loss

■ Surprisingly, according to Erie's policy, losses caused by inadequate or faulty workmanship are excluded "if any peril excluded by this policy contributes to the loss in any way." R. at 39. The text of the policy, then, appears to condition the exclusion for losses due to faulty workmanship on the occurrence of another excluded peril that contributes to the losses. Erie concedes that the policy excludes losses due to faulty workmanship only when another excluded peril contributes to those losses.[4] In other words, Erie does not dispute Schultz's contention that she may recover under the policy if she shows that only faulty workmanship or construction caused her losses. Erie, to the contrary, maintains that wear and tear and deterioration along with Schultz's intentional acts contributed to Schultz's losses along with faulty workmanship. To that end, Erie designates Ricky Pierce's deposition wherein he described the condition of the home as unlivable with a myriad of defects such as: a sloping roof, rotting carpet, sinking floors, and worn siding. R. at 139–40.

Countering Erie's designated evidence, Schultz maintains that there is a genuine issue of material fact concerning whether another excluded peril contributed to her loss. Schultz maintains that she hired the Pierce brothers to remodel the house "by remodeling the interior and adding a 16′ × 24′ addition with an extra bath." R. at 274. Furthermore, Ricky Pierce acknowledged that he was hired in part to build a "master bedroom with a bathroom." R. at 139. The designated evidence also shows that Schultz's home underwent substantial renovations in 1979–80, 1989, and 1994. R. at 69, 273–74. Resolving all inferences in favor of Schultz, this evidence tends to show that Schultz's home was not suffering from deterioration and wear and tear when the Pierce brothers began their work.

Erie answers that Schultz contradicts her own deposition testimony with a self-serving affidavit, and, therefore, her affidavit should not be used to create a genuine issue of material fact. Appellee's brief at 15 (citing *Gaboury v. Ir. Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1314 (Ind. 1983)). While parts of Schultz's affidavit may be self-serving, other portions—for instance, those discussing the addition—raise a genuine issue of material fact concerning the condition of the home when she hired the Pierce brothers. Viewing the designated evidence in the light most favorable to Schultz leads us to determine that some other excluded peril may not have contributed to Schultz's damages. It is possible that some of the Schultz's damages could have been caused by faulty workmanship alone. For this reason, we must remand this action to the trial court for full disposition of Schultz's claims.

---

4. Erie's brief on appeal reads:
   Schultz argues that under the "faulty workmanship/construction" exclusion, Erie must not only establish that the loss arose from workmanship or construction, but also show that another peril excluded by the coverage was involved. *Schultz erroneously contends that Erie did not demonstrate another peril which was excluded. In fact, Erie demonstrated two perils that were excluded.*
   Appellee's brief at 19 (emphasis supplied).

Judgment reversed and remanded for further proceedings not inconsistent with this opinion.

BAILEY, J., and MATHIAS, J., concur.