OPINION OF THE COURT
Karen S. Smith, J.
Defendant Paramount Insurance Company’s motion for summary judgment is granted in part and denied in part, as discussed more fully below.
Plaintiff Todd Wider brought the instant action to recover for damage to his personal and real property allegedly caused by defendant Heritage Maintenance, Inc.’s negligent work in cleaning the limestone facade of Wider’s property.[1] Defendant Paramount Insurance Company, Wider’s insurer for his property, disclaimed coverage for Wider’s losses under the commercial policy it sold to Wider, and Wider subsequently brought the instant action alleging Paramount breached the policy by refusing to cover his losses. Paramount now moves for summary judgment, arguing that based on Wider’s claims and the policy, it is entitled to judgment dismissing the claims, as a matter of law, as the losses are not covered by the policy. Wider opposes the motion and argues that (1) the losses are covered by the policy, (2) portions of the policy are ambiguous, and, in the alternative, (3) Paramount’s motion is premature.
*965 The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence in an admissible form to demonstrate the absence of any material issues of fact. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986].) Once the movant has made such a showing, the burden then shifts to the opposing party to produce evidence in admissible form sufficient to establish the existence of any material issues of fact requiring a trial of the action. (Zuckerman v City of New York, 49 NY2d 557 [1980].)
In support of its motion, Paramount submits (1) the complaint; (2) Wider’s verified bill of particulars; and (3) the commercial property insurance policy. In opposition, Wider submits (1) a letter dated May 11, 2005 from Paramount to Wider, disclaiming coverage for the damage; (2) Paramount’s answer with cross claims; (3) Wider’s notice of deposition of Paramount; (4) an unauthenticated e-mail dated September 1, 2006 from Kenneth M. Portner, Esq., counsel for Paramount, to Charles Stewart, counsel for Wider; and (5) an unauthenticated e-mail dated September 5, 2006 from Portner to Stewart.[2]
Paramount’s Moving Papers
As a threshold issue, Wider argues that Paramount’s motion is facially defective for failure to comply with two procedural requirements for bringing a motion in New York Supreme Court.
First, Wider argues that Paramount’s affidavit in support of its motion should be stricken because it is not by an individual with personal knowledge of the facts, pursuant to CPLR 3212 (b), but is instead supported by an attorney affirmation submitted “on information or belief.” Wider cites to JMD Holding Corp. v Congress Fin. Corp. (4 NY3d 373 [2005]), in which the Court found the supporting affidavit to be insufficient because it was made by a person without personal knowledge. In that case, however, the moving party submitted no evidence in support of its motion. The instant motion is distinguishable from JMD in that Paramount has submitted evidence in admissible form in support of its motion, namely, the insurance policy, to *966 which Wider has posed no objection; and the facts, as stated in Wider’s complaint, are undisputed by Paramount in its affirmation. Therefore, the court declines to strike Paramount’s motion papers, and will consider the facts (as presented by Wider in the complaint) and the contract attached to Paramount’s attorney’s affirmation.
Second, Wider argues that the affirmation should be stricken because it contains legal argument, contravening 22 NYCRR 202.8 (c), which states that affirmations shall be for statements of fact while briefs shall contain statements of the law. While Wider is technically correct, Paramount does not include its legal citations and support for its arguments in the affirmation, but merely provides an outline or summary of its legal arguments. While not strictly in keeping with 22 NYCRR 202.8 (c), such a minor deviation does not justify striking motion papers.
Facts
As Paramount accepts the facts as stated by Wider for purposes of this motion, the facts are not in material dispute. According to Wider’s complaint, in July 2004 he contracted with defendant Heritage to perform certain cleaning and restoration work on a townhouse owned by him (hereinafter the building). Among other things, Heritage was to erect scaffolding around the building and clean the limestone facade and granite base of the building. According to Wider, Heritage’s proposal stated that the facade was to be cleaned “by the gentlest means possible ([wjater soak method and low pressure spray), [cjarvings to be hand cleaned only, chemical to only be used on areas where staining persists. Utilizing Proseo Products only.” Wider alleges that through its negligence, Heritage caused serious water damage to the building in connection with cleaning operations that began on August 26, 2004. Most of the damage was caused by water leaching through the building’s limestone facade or through other openings in the building, which caused substantial water damage to the interior and contents of the building.
Wider has alleged that two separate events caused damage to various portions of the building: the lobby office, apartments 2A, 3A and 4A, and to the west side of the building’s structure. The first incident, according to Wider’s bill of particulars, occurred on August 26 and 27, 2004, when the limestone facade became saturated with water as a result of Heritage’s cleaning operations, and water thereafter entered the building from numerous places, including windows, doors, joints and walls. In *967 his affidavit in opposition to Paramount’s motion, Wider states that Heritage deviated from industry custom regarding the cleaning and monitoring of a building with a limestone facade, by failing to ensure the building was watertight before engaging in the work. As a result, Wider alleges that Heritage was negligent in, inter alia, failing to use proper “workmanship” in the cleaning of the building. Wider also alleges that Heritage failed to supervise the workers performing the cleaning work and that it should have discovered the negligent work and subsequent damage earlier.
The second event occurred in September 2004, when rainwater collected in several tarps erected by Heritage on the scaffolding. The tarps were tied to limestone finíais[3] on the building, and the weight of the collected rainwater caused the finíais to break, sending water cascading down from the tarps onto the building, causing the water to consequently seep into the building. This incident, according to Wider’s affidavit, exacerbated some of the conditions caused by the August incident and caused some new damage to an air conditioner and a balcony. Wider has alleged that Heritage was negligent in failing to properly construct and maintain the scaffolding, which led to the accumulation of water in the tarps.
Wider notified Paramount of the damage suffered at the building, but in a letter dated May 11, 2005, Paramount denied coverage for both incidents. Wider subsequently brought the instant action.
The Paramount Insurance Policy
Wider purchased a commercial property “all risk” insurance policy from Paramount, with a policy period of May 27, 2004 to May 27, 2005.[4] Under the building and personal property coverage form for Wider’s policy, “direct physical loss of or damage to Covered Property at the premises caused by or resulting from any Covered Cause of Loss” is covered by the policy. Under the “special” section of the policy, covered cause of loss is defined as “Risks of Direct Physical Loss” and includes all forms of loss *968 unless it is excluded in section B (hereinafter exclusions or excluded loss) or limited by section C (hereinafter limitations or limited loss) of the “special” policy form CP 1 20 10 91. Paramount argues that the August incident is not covered because it is considered a limited loss, and that neither the August nor September incidents are covered because they are both excluded losses.
A plaintiff seeking coverage under an all-risk insurance policy, such as the one at issue here, must make a prima facie case of coverage for the losses by showing that the losses suffered were of covered property. (242-44 E. 77th St., LLC v Greater N.Y. Mut. Ins. Co., 31 AD3d 100 [1st Dept 2006]; see also 3-36 Bender’s New York Insurance Law § 36.04.) An all-risk policy is intended to cover “fortuitous event[s],” which have been defined as events “happening by chance or accident.” (80 Broad St. Co. v United States Fire Ins. Co., 88 Misc 2d 706, 707 [Sup Ct, NY County 1975], affd 54 AD2d 888 [1st Dept 1976]; see also New York State Elec. & Gas Corp. v Lexington Ins. Co., 204 AD2d 226 [1st Dept 1994].) Once a plaintiff has met its burden, it is well settled that
“[if] an insurer wishes to exclude certain coverage from its policy obligations, it must do so ‘in clear and unmistakable’ language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.” (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984] [citations omitted]; see also 242-44 E. 77th St., LLC v Greater N.Y. Mut. Ins. Co., supra; Lee v State Farm Fire & Cas. Co., 32 AD3d 902 [2d Dept].)
Here, there is no dispute that Wider has met his burden of making a prima facie case that the losses he suffered were of covered property under the policy. The burden, then, shifts to Paramount to demonstrate that the losses are excluded or limited by the policy.
*969 The “Rain Limitation”
Paramount claims that the September incident, in which rainwater accumulated in tarps that Heritage tied to limestone finíais and then escaped and cascaded into the building when the finíais broke, falls within the limitation on loss or damage caused by rain (hereinafter the rain limitation). That provision states:

“C. LIMITATIONS

“1. We will not pay for loss of or damage to: . . .
“c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
“The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters.” (Emphasis added.)
According to Paramount, rain was the proximate cause of the water damage, and the resulting damage is therefore limited by the rain limitation. In opposition, Wider first points out that by the express terms of the rain limitation, only damage to the interior of the building or personal property located within the building is excluded. The court agrees with Wider’s interpretation of the rain limitation and, therefore, any and all damage or loss to the exterior of the building that Paramount alleges was caused by rain — specifically an air conditioner, a balcony and the finíais — would not fall under this limitation.
Second, Wider argues that Paramount has not demonstrated that it was raining at the time the finíais broke or that the water which accumulated in the tarp was “rain.” In support of his argument, Wider cites two foreign cases — one from the Supreme Court of Wyoming and one from the Supreme Court of Nebraska — in which the courts discuss the difference between “rain” and “surface water.” However, as Paramount points out and the court agrees, both cases are readily distinguishable from the instant case and are inapposite to the issues at hand. The rain limitation specifically precludes coverage for loss or damage to the interior of the building or personal property inside the building caused by or resulting from rain. Therefore, Paramount need not prove that it was raining at the moment that the finíais broke, because if the finíais broke as a result of rain, the rain limitation applies. However, in an effort to determine the difference between “rain” and “surface water,” *970 it is helpful to look to other provisions in the policy. The policy contains a separate exclusion which addresses damage or losses caused by “surface water”:

“B. EXCLUSIONS

“We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . .
“G. Water (1) Flood, surface water . . . .” (Emphasis added.)
Neither Paramount nor Wider have pointed to this exclusion in their submissions to the court, and the exclusion is referenced here solely to note that the policy makes a distinction between rain on the one hand and surface water on the other. In context, it is clear that the “water” exclusion was intended to apply to, inter alia, water pooled on the ground, flowing over the ground, or coming directly from a body of water; conversely, the rain limitation is intended to apply to damage caused by or resulting from water falling from the sky that has not yet pooled on the ground or in another body of water. In this case, the rain pooled on tarps before it hit the ground, excluding it from the category of “ground water.” Therefore, the issue is one of causation: Was the cause of the September incident rain or Heritage’s workmanship in placing the tarps?
“In determining whether a particular loss was caused by an event covered by an insurance policy where other, noncovered events operate more closely in time or space in producing the loss, the question of whether the covered event was sufficiently proximate to the loss to require that the insurer compensate the insured will depend on whether it was the dominant and efficient cause.” (Throgs Neck Bagels v GA Ins. Co. of N.Y., 241 AD2d 66, 69 [1st Dept 1998]; see Standard Oil Co. of N.J. v United States, 340 US 54, 58 [1950] [“proximate cause ‘does not necessarily refer to the cause nearest in point of time to the loss. But the true meaning of that maxim is, that it refers to that cause which is most nearly and essentially connected with the loss as its efficient cause’ ”], quoting Dole v New England Mut. Mar. Ins. Co., 7 F Cas 837, 853 [Cir Ct D Mass 1864] [No. 3,966].)
In any proximate cause analysis in an insurance context, the *971 chain of causation is explored only to the extent that the inquiry reflects the intent of the parties. (Album Realty Corp. v American Home Assur. Co., 80 NY2d 1008, 1010 [1992].) “Our guide is the reasonable expectation and purpose of the ordinary business [person] when making an ordinary business contract.” (Id., quoting Bird v St. Paul Fire & Mar. Ins. Co., 224 NY 47, 51 [1918].)
Here, it is clear that the policy was not intended to cover damage to the interior of the building stemming from rain. However, the September incident was not merely caused by rain falling and damaging the building or its contents. The placing of the tarps was the dominant and efficient cause of the September incident, since, in the tarps’ absence, the rain would have merely fallen on the ground. The ordinary businessperson purchasing the policy at issue here would not have expected the rain limitation to apply to an incident in which a temporary, man-made structure collected rainwater, diverting it from the ground and into the policyholder’s building. Therefore, the rain limitation cannot be used to disclaim coverage for damage and losses stemming from the September incident.
The “Faulty Workmanship”/“Faulty Maintenance” Provision
Paramount further argues that neither the August nor the September incidents are covered pursuant to the policy’s exclusion for loss or damage caused by or resulting from, inter alia, faulty “workmanship or maintenance” (hereinafter alternatively referred to as the faulty workmanship provision and faulty maintenance provision), which states:

“B. EXCLUSIONS . . .

“We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage. . . .
“c. Faulty, inadequate or defective: . . .
“(2) Design, specifications, workmanship, repair . . .
“(4) Maintenance-, of part or all of any property on or off the described premises.” (Emphasis added.)
In opposition, Wider argues that the term “workmanship” is not defined in the policy and is an ambiguous term subject to more than one interpretation, and that such ambiguity should thus be construed in his favor. The parties have pointed to — and this court’s own research has found — no New York court which has had occasion to determine whether the term “workman *972 ship” as used, in this context is ambiguous, and so this court turns to well-settled rules of construction in this state and decisions of other states’ courts in interpreting the provision. Where an insurance policy provision reasonably lends itself to two conflicting interpretations, its terms are ambiguous and must be construed in favor of the insured and against the insurer, the drafter of the policy language. (242-44 E. 77th St. v Greater N.Y. Mut. Ins. Co., supra; see also Matter of Mostow v State Farm Ins. Cos., 88 NY2d 321 [1996].) The test for whether an insurance provision is ambiguous focuses on the “reasonable expectations of the average insured upon reading the policy.” (Butler v New York Cent. Mut. Fire Ins. Co., 274 AD2d 924, 926 [3d Dept 2000], quoting Matter of Mostow v State Farm Ins. Cos., supra at 327-328.) Policy exclusions, in particular, are given a strict and narrow construction, with any ambiguity resolved against the insurer. (Belt Painting Corp. v TIG Ins. Co., 100 NY2d 377 [2003].) However, it is also well established that when the policy is clear, precise and unambiguous in its terms, and the contract terms lead to nothing absurd, it is not proper for the court to resort to such rules of construction. (See First Natl. Bank of E. Islip v National Sur. Co., 228 NY 469 [1920]; Eckstein v Monarch Life Ins. Co., 82 AD2d 774 [1st Dept 1981]; Adorable Coat Co. v Connecticut Indem. Co., 157 AD2d 366 [1st Dept 1990]; Consolidated Edison Co. of N.Y. v United Coastal Ins. Co., 216 AD2d 137 [1st Dept 1995]; see also 68A NY Jur 2d, Insurance §§ 767, 769.)
In arguing that “workmanship” is ambiguous, Wider relies primarily on Allstate Ins. Co. v Smith, a case out of the United States Court of Appeals for the Ninth Circuit, and urges this court to adopt its reasoning. (929 F2d 447 [1991], reh denied 1991 US App LEXIS 18186 [1991].) In Smith, the plaintiff purchased an all-risk policy from the defendant insurance company for his medical office. During renovation work on the roof, a contractor removed the roof and failed to cover the building, after which it rained, damaging the plaintiff s office equipment and the interior of the building. The plaintiff there, as here, argued that the term “workmanship” in a nearly identical provision was ambiguous, positing two possible interpretations of “faulty workmanship”: (1) the flawed quality of a finished product; or (2) a flawed process. The Smith court held that the term was ambiguous because it was subject to more than one interpretation, and applied the meaning more favorable to the insured. The court pointed to a separate provision for losses *973 “involving collapse of a covered building . . . caused by . . . use of defective materials or methods of construction” which it said applied to a flawed process, leaving the faulty workmanship provision to apply to the flawed quality of a finished product. (929 F2d at 449-450.) The Smith court did not, as Wider urges, find that the only reasonable interpretation is one of a flawed quality of a product in every case; rather, the court found the term “faulty workmanship” to be ambiguous under the facts and circumstances of that case. (Id. at 450.)
Paramount urges this court to disregard the Smith decision, and instead rely on Arnold v Cincinnati Ins. Co. (276 Wis 2d 762, 688 NW2d 708 [2004]), a case it argues is more factually relevant and contains better law. In Arnold, the plaintiffs hired a contractor to strip and restain the cedar siding on their home. The product used for stripping the stain from the siding, however, caused significant damage to the exterior of the aluminum windows and to the caulking around the windows, among other damage. Both water and the stripping product leaked into the home through damaged seals on the windows and the skylights. The plaintiffs sought coverage for the damage from their homeowner’s insurance policy and the insurance company disclaimed coverage under a nearly identical faulty workmanship/faulty maintenance provision. The plaintiffs argued that the faulty workmanship provision was ambiguous and therefore had to be construed in their favor.
The Arnold court stated that “[t]he conduct encompassed in the faulty workmanship exclusion may be negligent; but the proper inquiry is whether a reasonable insured would understand that the conduct described in the [faulty workmanship] exclusion includes the failures to use protective coverings, to properly use the pressure washer, and to properly clean up.” (276 Wis 2d at 776, 688 NW2d at 714-715.) The Arnold court found that a reasonable insured would understand the meaning of “faulty workmanship,” even though the policy did not define it and even though the word “negligence” was never used. “In the context of a policy covering physical loss to one’s residence, a reasonable insured would understand that ‘workmanship’ refers to the quality of work done on the residence” (276 Wis 2d at 775, 688 NW2d at 714), including in preparing to work, conducting the work, and cleaning up the work. (276 Wis 2d at 776, 688 NW2d at 714-715.) The court disagreed with the plaintiffs’ argument that the exclusion could only reasonably apply to damage to the siding on which the work was being *974 performed, and not other damage, stating that “[t]he exclusion plainly applies to any loss to the covered property that is caused by the specified activities and events.” (276 Wis 2d at 777, 688 NW2d at 715.) While some other jurisdictions, like the Ninth Circuit, have determined that the term “workmanship” is ambiguous, most courts have held that the term is not ambiguous and have therefore declined to interpret the term in the insured’s favor where the term was clear. The Court of Appeals of Indiana was asked, as this court is asked by Wider, to adopt the reasoning of the Smith court, and found the Ninth Circuit court’s analysis “unpersuasive” for three reasons:
“First, while the term ‘faulty workmanship’ allows at least two definitions, we see no reason why it must mean either a ‘flawed product’ or a ‘flawed process.’ Since ‘workmanship’ denotes both ‘process’ and ‘product,’ an insurer could just as likely have both perils in mind when it drafts a policy’s list of exclusions. Second, the ‘either/or’ approach creates a false distinction, failing to take into account that a flawed process will often lead to a flawed product. ... If the materials used are adequate and a flawed product still results, it is likely that a flawed process led to the flawed product. Third, the immediate context of Erie’s policy indicates that ‘faulty workmanship’ means more than just the finished product.[5]. . . Read in context, ‘workmanship, ’ falling between planning and maintenance, at the very least signifies a component of the building process leading up to a finished product. Therefore, we find that ‘faulty workmanship’ is unambiguous and should not be construed, in the context of this policy, to mean only a flawed finished product.” (Schultz v Erie Ins. Group, 754 NE2d 971, 976-977 [Ind Ct App, 2d Dist 2001] [additional emphasis added].)
*975 In this case, as in Schultz, Heritage was not hired to create a product (i.e., build a roof), but was hired to complete the process of cleaning the facade of Wider’s building. This court finds the reasoning of both Arnold and Schultz persuasive. Webster’s Third New International Dictionary defines “workmanship” as “1: the art or skill of a workman: the execution or manner of making or doing something.” There is no reasonable conflict in finding that “workmanship” can refer to the quality of both the process by which the work is done and of the finished product. Finding that the term “workmanship” is ambiguous because it can mean either would “strain the contract language beyond its reasonable and ordinary meaning.” (68A NY Jur 2d, Insurance § 769; see also Consolidated Edison Co. of N.Y. v United Coastal Ins. Co., 216 AD2d 137 [1st Dept 1995].) An ordinary businessperson applying for a commercial property insurance policy and reading the language of this exclusion would understand that, depending on the type of work done, the faulty workmanship exclusion could apply to the process of doing the work or the finished product. (See 68A NY Jur 2d, Insurance § 772.) The court notes that even Wider uses “workmanship” to describe both a flawed finished product and Heritage’s allege failure in performing the work for which it was hired. In the complaint, Wider alleges that Heritage “owed a duty to clean the limestone and granite facade of the Property with the care and skill necessary to meet the standard of workmanlike quality” (11 28), was negligent in its “failure to use proper workmanship in the cleaning of the building” (U 29 [a]), and “fail[ed] to detect errors and failures in workmanship” (K 29 [c]).
It should also be noted, as Paramount points out, that the exclusion at issue does not only exclude faulty workmanship, but also excludes faulty maintenance. Wider has not alleged that “maintenance” is ambiguous, so the court applies its plain and ordinary meaning. Webster’s Third New International Dictionary defines “maintenance” as, inter alia, “4: the labor of keeping something (as buildings or equipment) in a state of repair or efficiency.” As Heritage was hired to clean and repair the facade of the building, its work was certainly “maintenance” as that term is used in the policy.
“Faulty Workmanship/Maintenance” as Applied to the August Incident
Wider alleges that the August incident and the losses that flowed therefrom were caused by Heritage’s “failure to use *976 proper workmanship in the cleaning of the building” which led to the limestone facade becoming saturated and water “leaching” through the walls into the building. There is no question that based on Wider’s allegations, the August incident is excluded from coverage under the Paramount policy exclusions. Heritage was hired to clean and repair the facade of the building, Wider alleges that the process by which the cleaning was done was faulty and characterizes Heritage’s alleged breach of their agreement as a “failure to use proper workmanship.” Had Heritage followed industry standard and their own proposed processes in cleaning the facade, according to Wider, the damage would not have occurred. The policy is clear and precise in excluding losses caused by both faulty workmanship and faulty maintenance.
“Faulty Workmanship/Maintenance” as Applied to the September Incident
While the rain limitation does not limit coverage of the September incident, Paramount has also disclaimed coverage for the September incident based on the faulty workmanship exclusion. Wider has alleged that Heritage was negligent in “failing to maintain the scaffolding which allowed rainwater to pool in a tarp and spill water into the building.” (Complaint If 29 [d].) Paramount has cited to no cases in which a New York court has found, as a matter of law, that improperly maintaining scaffolding is “faulty workmanship,” per se, and the parties have presented scant evidence and factual allegations on this issue. To prevail on a motion for summary judgment, the moving party must sustain its burden of demonstrating entitlement to judgment as a matter of law through admissible evidence. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986].) Only then does the burden shift to the opposing party to demonstrate that there are material issues of fact requiring trial. (Zuckerman v City of New York, 49 NY2d 557 [1980].) Here, Paramount has failed to present any evidence that Heritage’s maintenance of the scaffolding was “faulty” or that it falls under an exclusion or limitation in the policy, and the facts, as presented by Wider in his complaint, are insufficient for the court to make such a determination.
The “Ensuing Loss” Provision
As noted earlier, the faulty workmanship exclusion of the policy states that Paramount will not pay for loss or damage caused by or resulting from faulty workmanship or mainte *977 nance. However, the provision also states that “if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.” Wider argues that even if the faulty workmanship applies to the losses he suffered, it would be premature to grant summary judgment to Paramount at this juncture because no depositions and little discovery have been conducted. Specifically, Wider opines that through the process of discovery, facts may develop that show other factors contributed to the damage, such as Heritage’s failure to report the damage or to properly remediate it. In that case, according to Wider, the ensuing loss provision may provide coverage for some of the damage.
While during the course of discovery, facts may come to light to show that other factors were at play in causing the damage, Paramount has moved for summary judgment based on the facts alleged by Wider and the documentary evidence. As to the August incident, Paramount has met its burden of demonstrating its entitlement to judgment as a matter of law dismissing those claims, based on the policy. To overcome such a showing, Wider must submit evidence in admissible form raising material issues of fact requiring trial. Here, Wider merely speculates that other facts could come to light that may change Paramount’s liability. Such arguments and speculation are insufficient to meet Wider’s burden.
Conclusion
As neither Heritage nor Polonia is a party to Paramount’s motion for summary judgment, the court does not decide any issues of liability on the part of either. In holding that the policy does not cover damage caused in the September incident as a result of the faulty workmanship of Heritage, the court merely precludes Wider from seeking coverage from Paramount for said damages, including representation by Paramount on his claims against Heritage, but in no way reaches any decision as to whether Heritage breached its contract with Wider.
Accordingly, it is ordered that the portion of Paramount’s motion for summary judgment seeking dismissal of the claims involving alleged damage caused on August 26 and 27, 2004 is granted; and it is further ordered that the portion of Paramount’s motion for summary judgment seeking dismissal of the claims involving alleged damage caused in September 2004 is denied.

. According to the motion papers, Heritage allegedly hired 117 Liberty Street, LLC, doing business as Polonia Development and Preservation Services Co., as a subcontractor, and it was the subcontractor who performed much of the actual work on the facade. Neither Heritage nor Polonia is a party to the instant motion, so in referencing the work done, the court will refer to Heritage only.

. Both e-mails fail to comply with the requirements of the CPLR providing for authentication of reproduced electronic documents. Additionally, the documents, which concern solely legal maneuvering by counsel, are not relevant to the instant motion. For these reasons, the court does not consider them in coming to its decision.

. American Heritage Dictionary defines “finial” as “A sculptured ornament, often in the shape of a leaf or flower, at the top of a gable, pinnacle, or similar structure.”

. From the motion papers it is not clear if this is a commercial property, although it appears that Wider and some of Wider’s family live in this multilevel townhouse, while other portions are rented out. Regardless, the commercial nature of the property has not been raised as an issue in the parties’ motion papers.

. The policy provision in Schultz (at 976) appears to be almost identical to the provision at issue here, disclaiming coverage for damage,
“8. Caused by, resulting from, contributed to or aggravated by faulty or inadequate:
“a. planning, zoning, development;
“b. design, development of specifications, workmanship, construction;
“c. materials used in construction; or
“d. maintenance; of property.”